UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Byron Martin,                    :
      Petitioner,            :
                        :
    v.                          :    File No. 1:05-CV-325
                        :
Robert Hofmann,                  :
Commissioner, Vermont            :
Department of Corrections,       :
      Respondent.            :

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
### (Papers 2 and 4)

Petitioner Byron Martin has filed a *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his state court conviction for possession of stolen property.  Martin raises eight substantive claims in support of his petition, each of which have been presented and denied in state court.  For the reasons set forth below, I recommend that Martin's petition be DISMISSED.

### Factual and Procedural Background

In or about June, 2002, police obtained a warrant to search an apartment in Barton, Vermont.  The apartment was occupied by Martin and his girlfriend, Kathleen Hackett.  As a result of the search, police recovered over $500 worth of stolen property.  Martin and Hackett were both in the apartment at the time of the search, and

Martin allegedly stated a number of times during the search that "[e]verything in here is my responsibility."

Prior to trial, Martin's attorney moved to suppress his client's incriminating statements, arguing that Martin was subjected to police interrogation while in custody, but was provided no <u>Miranda</u> warning.  An evidentiary hearing was held, and one of the officers present during the search testified that Martin made his self-incriminating statements while police were trying to question Kathleen Hackett.  Defense counsel cross-examined the officer, arguing that, in fact, Martin had been asked questions directly, and that the officer's hearing testimony contradicted his deposition testimony on this issue.  The trial court considered the hearing testimony and the excerpts of the deposition testimony cited by defense counsel, and ultimately issued a written decision denying the motion to suppress.  After the close of evidence, defense counsel moved for admission of the officer's entire deposition.  The state objected, and the trial court denied the motion.

Martin was subsequently convicted by a jury on one count of felony possession of stolen property, and was

2

sentenced to five to ten years in prison.  He appealed his conviction, with counsel, arguing that the trial court erred in denying the motion to suppress.  This was the only issue raised on direct appeal.  The Vermont Supreme Court affirmed Martin's conviction, finding that the lower court's ruling was not clearly erroneous.

Proceeding *pro se*, Martin filed three post-appeal actions in the Orleans Superior Court: a motion for post-conviction relief, a civil rights action, and a petition for a writ of habeas corpus.  These actions included all of the claims that Martin now presents in his § 2254 petition.  The claims include: (1) police misconduct; (2) illegally obtained confession; (3) ineffective assistance of counsel; (4) excessive sentence; (5) newly discovered evidence; (6) insufficient evidence to support his conviction; (7) false arrest, conviction and sentence; and (8) erroneous denial of the motion to suppress.  The Orleans Superior Court consolidated Martin's three actions, and the State moved for summary judgment.

In a detailed order dated May 13, 2005, the Superior Court granted summary judgment to the State.  The court first dismissed Martin's civil rights action, concluding

3

that the only defendant served was the Vermont State
Police, and that a state agency was not a "person" under
42 U.S.C. § 1983.  The court next addressed Martin's
direct challenges to his conviction.  The court rejected
Martin's claim that his statements during the search were
coerced and involuntary, holding that this argument
should have been part of the motion to suppress, was not
raised on direct appeal, and that the "deliberate bypass"
of these judicial remedies waived Martin's ability to
bring his claims on collateral review.  As to Martin's
claim that he was prejudiced by the lack of a <u>Miranda</u>
warning, the court found that <u>Miranda</u> was immaterial
since, as established previously, the incriminating
statements were made outside of any police interrogation.

Martin's "newly discovered evidence" claim was based
on the assertion that a photograph of him in handcuffs
was never produced in discovery.  Martin claimed that
this photograph would have proven (1) that he was in
custody at the time of his statements, (2) that none of
the stolen property was found in his room, and (3) that
he was handcuffed with his hands at his back, thus
showing coercion.  The state court found that the

question of custody was conceded at the time of the motion to suppress, and that the issue of coercion should have also been raised at that time.

Martin's next claim was that the police arrested him "on allegations" and without evidence.  The court determined that post-conviction relief was unavailable on this claim, in light of the jury's guilty verdict and the Vermont Supreme Court's ruling on direct appeal.  The court also rejected Martin's ineffective assistance of counsel claims, finding that he had failed to show any prejudice resulting from the alleged negligence.  The court further noted that Martin had not presented expert testimony to show that his attorneys had been negligent.

Several of Martin's other claims, including his allegations of prosecutorial and judicial misconduct, were barred for failure to raise them on direct appeal. To the extent that Martin claimed ineffective assistance of appellate counsel, the court concluded that Martin had failed to show that counsel's performance fell outside "the range of professional competency expected of Vermont criminal defense counsel, notwithstanding an adverse outcome."  (Paper 4-3, at 8 n.11).  Finally, the court

addressed Martin's claim that his sentence was excessive. Martin's claim was based, in part, upon his belief that he was being punished for rejecting a plea agreement that included a lesser sentence. The court rejected this claim, finding no evidence of improper motive on the part of the sentencing judge.

Martin appealed the lower court's decision to the Vermont Supreme Court. That court concluded that "the trial court thoroughly addressed the issues raised by petitioner, and we find no error in its resolution of his claims. We need not repeat all of the court's findings here. The findings are supported by the record, and they support the court's conclusions as to petitioner's claims." Although the state supreme court did not address each issue individually, it did discuss Martin's challenge to the ruling on the motion to suppress. On that issue, the court held that the admissibility of Martin's incriminating statements had been decided by the trial court, and could not be re-litigated in a post-conviction review petition. The court further endorsed the lower court's conclusion that the question of Martin's custody during the search was irrelevant to the

ultimate determination of the suppression issue.

The Vermont Supreme Court also discussed Martin's ineffective assistance of counsel claim.

> While the trial court stated that expert evidence would have bolstered petitioner's claim, its decision did not rest solely on this basis. The court discussed in detail the absence of evidence presented by petitioner to support his claims. As the trial court found, even assuming that trial counsel's performance was inadequate, petitioner made no showing as to how these alleged deficiencies would have resulted in a different outcome. Similarly petitioner failed to present admissible evidence to establish, or even create, a genuine dispute that any alleged failures to raise issues on appeal were in fact negligent or that any such negligence made any material difference in the ultimate outcome. We find no error in the trial court's findings or its conclusions.

(Paper 12, Ex. 8). Finally, the court affirmed the lower court's ruling on Martin's excessive sentence claim, concluding that there was no record evidence of improper conduct by the sentencing court.

Martin now brings the same claims pursuant to § 2254. In his petition, Martin explains that each of his claims is explained in his briefs to the Vermont Supreme Court, which he has attached as exhibits to the petition. He has also submitted a reply to the respondent's answer to the petition, in which he offers additional arguments

in the form of an "amendment" to his petition.   Martin
has requested court-appointed counsel to assist him with
his habeas proceeding.

Discussion

I.   Habeas Corpus Standard

As discussed above, the state courts addressed the
merits of some of Martin's claims, and dismissed others
as procedurally defaulted.   A petition for a writ of
habeas corpus may not be granted with respect to any
claim that has been adjudicated on the merits in the
state courts unless that adjudication:

> (1) resulted in a decision that was contrary to,
> or involved an unreasonable application of,
> clearly established Federal law, as determined
> by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light
> of the evidence presented in the State court
> proceeding.

28 U.S.C. § 2254(d).   For a claim to be adjudicated "on
the merits" within the meaning of § 2254(d), it must be
"based on the substance of the claim advanced, rather
than on a procedural, or other, ground." Sellan v.
Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (internal
quotation marks and citations omitted).

8

In <u>Williams v. Taylor</u>, the Supreme Court held that a state court decision is "contrary to" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result.  529 U.S. 362, 405-06 (2000).  <u>Williams</u> also held that habeas relief is available under the "unreasonable application" clause only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  <u>Id.</u> at 413.  A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  <u>Id.</u> at 411; <u>see also Lainfiesta v. Artuz</u>, 253 F.3d 151, 155 (2d Cir. 2001).  Rather, the state court's application must have been "objectively unreasonable."  <u>Williams</u>, 529 U.S. at 409.

Furthermore, federal habeas review is available for

9

a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Errors of state law are not subject to federal habeas review. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). To be entitled to habeas relief, a petitioner must demonstrate that the conviction resulted from a state court decision that violated federal law. Id. at 68.

Where a state court rejects a petitioner's claim because the petitioner failed to comply with a state procedural rule, the procedural default constitutes an adequate and independent ground for the state court decision. See, e.g., Coleman v. Thompson, 501 U.S. 722, 729-30, 749-50 (1991). "[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990). Although procedurally defaulted claims are deemed exhausted for habeas purposes, a procedural default will "bar federal habeas review of the federal claim, unless

10

the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989) (citations omitted).

II.  <u>Rulings on the Merits</u>

In Martin's direct appeal of his conviction, the Vermont Supreme Court addressed the merits of his motion to suppress.  Many of the claims that Martin has raised subsequently, including claims presented in his § 2254 petition, have some relationship to the suppression decision.  For example, Martin's allegations of police misconduct, illegally obtained confession, ineffective assistance of counsel, false arrest and newly discovered evidence all reference his alleged interrogation, custody, and the lack of a <u>Miranda</u> warning.  To the extent that the state courts reached the merits of these issues, this Court may conduct a review of their determinations under the standard set forth at § 2254(d).

A.  Motion to Suppress

As he did on direct appeal, Martin contests the denial of his motion to suppress.  Martin claims that the

11

issue in question at the suppression hearing "was whether or not I was in custody at the time when the alleged statement of confession was said." Because custody was proven, Martin argues that the motion to suppress should have been granted.

Despite Martin's claim, the pivotal issue on the motion to suppress was interrogation, not custody. Martin challenges the trial court's ruling on the interrogation issue as well. Specifically, he claims that one of the police officers admitted in a deposition that he had questioned Martin directly. The Vermont Supreme Court described the deposition testimony and subsequent testimony as follows:

> At the deposition, when defense counsel asked what the context of defendant's statement had been and whether the officer had asked defendant a question, the trooper answered: "I did. I said where did the refrigerator come from, or something like that, or how did (inaudible) well everything that's in here is my responsibility." In response to cross-examination at the motions hearing, the trooper explained that initially he was speaking only to the other resident when defendant blurted out the statement, but that when he continued to ask the question, and defendant continued to respond with the same statement, the officer began to direct his questions more generally to both defendant and the other resident.

(Paper 12, Ex. 1 at 1). The court then upheld the lower

court's ruling, finding that "there is support in the
record for the trial court's finding that defendant
volunteered the challenged statement in response to
questioning directed at another person."  Id. at 2.

Martin has submitted the trooper's entire deposition
transcript, as well as the transcript of the suppression
hearing, with his § 2254 petition.  Having reviewed the
transcripts, there is no indication that the state courts
applied the facts unreasonably.  The deposition testimony
is as the state supreme court described it, with the
trooper stating that he asked Martin about the
refrigerator.  At the suppression hearing, the trooper
explained that he was trying to ask Hackett about the
origins of the refrigerator, but that Martin kept
interrupting.

> [W]hen I initially asked her, [Martin] blurted
> out everything in here is my responsibility, so
> then every time I would talk to her, he would
> interrupt . . . . [Martin and Hackett] were
> several feet apart, but every time I would talk
> to her, he would interrupt and say . . .
> everything's my responsibility . . . . So then
> after a point of asking several times, I finally
> yelled out where did this come from?

(Suppression Hearing Transcript, at 25-26).  When
Martin's counsel confronted the trooper with his

13

deposition testimony, the trooper maintained that the questioning had been aimed "mainly" at Hackett, and that Martin had offered his statements in response to the questions posed to Hackett.  Id. at 25.

When presented with a § 2254 petition, a federal court must presume the state "court's factual findings to be sound unless [the petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 125 S. Ct. 2317, 2325 (2005) (citing 28 U.S.C. § 2254(e)); Parsad v. Grenier, 337 F.3d 175, 181 (2ds Cir. 2003); Mask v. McGinnis, 233 F.3d 132, 139 (2d Cir. 2000).  Here, Martin has not met this "demanding" standard.  Miller-El, 125 S. Ct. at 2325. The trial judge listened to the testimony, took "careful notes" during the cross-examination, and ultimately decided to accept the trooper's explanation of his testimony.  Martin now asks this Court to substitute its judgment for that of the state courts, but has failed to offer clear and convincing evidence that the state courts were in error.  Accordingly, the Court should not grant relief on the basis of Martin's claim that the denial of his suppression motion was objectively unreasonable.

14

Martin also alleges that his confession was invalid because he was never provided a Miranda warning.  Having found that Martin's confession was not the result of a police interrogation, the state courts concluded that the lack of a Miranda warning was immaterial.  The state courts' conclusions were consistent with established Supreme Court precedent.  See Thompson v. Keohane, 516 U.S. 99, 201 (1995) (Miranda applies only if there is interrogation and custody).

B.  Ineffective Assistance of Trial Counsel

Martin further claims ineffective assistance of counsel.  He makes these claims with respect to both trial and appellate counsel.  His claims against trial counsel consist of three separate allegations.  First, Martin contends that his attorney forgot to have the testifying officer's entire deposition admitted at the suppression hearing.  Second, he claims that counsel did not notify him when depositions were being scheduled.  Had he been notified, Martin claims that he would have attended, and would have been able "to remind my public defender to have these critical depositions admitted into evidence."  Third, Martin alleges that counsel failed to

15

call certain witnesses at the suppression hearing.  The
state courts rejected Martin's claims, concluding that he
had failed to show prejudice.

"[T]he proper standard for attorney performance is
that of reasonably effective assistance."  Strickland v.
Washington, 466 U.S. 668, 687 (1984).  A defendant must
establish (1) that counsel made errors so serious that he
was deprived of reasonably competent representation and
(2) that counsel's deficient performance prejudiced the
defense.  See Hernandez v. United States, 202 F.3d 486,
488 (2d Cir. 2000) (citing Strickland, 466 U.S. at
687-691)).  When determining the prejudice component of
Strickland, a court must determine whether, absent
counsel's error, it is reasonably probable that the
outcome of the proceeding would have been different.
Lindstadt v. Keane, 239 F.3d 191, 204 (2d Cir. 2001);
Mayo v. Henderson, 13 F.3d 528, 534 (2d Cir. 1994).  A
reasonable probability is a probability sufficient to
undermine confidence in the outcome.  Strickland, 466
U.S. at 703; Lindstadt, 239 F.3d at 204.

On Martin's first claim, that counsel failed to have
the trooper's deposition admitted into evidence, the

16

Vermont Supreme Court held that any alleged error was harmless.  In reaching this conclusion, the court found that the trial court had considered the deposition testimony as cited and used by defense counsel on cross-examination.  "At the motions hearing, defense counsel repeated the critical deposition testimony on several occasions.  The trial court expressly stated that it had taken careful notes on the excerpts of the deposition testimony cited by defense counsel." (Paper 12, Ex. 1 at 2).  Moreover, Martin has failed to cite, either here or in the state court proceedings, any additional portion of the deposition that would have been useful to his case.  His only claim is that his attorney forgot to admit the deposition itself, and that this failure was *per se* ineffective assistance.  Having still failed to show prejudice, Martin cannot succeed on this claim.

Martin's next argument is that he should have been notified of, and allowed to attend, the depositions in his case.  Again, Martin has failed to show prejudice arising out of this alleged error.  Martin claims that, had he attended the depositions, he would have been able to remind his attorney to have the depositions admitted

into evidence.  Given that Martin has not shown any
prejudice arising out of counsel's failure to have the
depositions entered into evidence, there is no basis for
Martin's claim that a reminder would have impacted the
outcome at trial.

The third ineffective assistance claim pertains to
counsel's alleged failure to call certain witnesses.
Martin claims that his attorney should have called
Trooper Tom Roberts, Trooper Kevin Charbonneau, and
Hackett.  Martin contends that if these witnesses had
been called "at least in the Motion to Suppress," their
testimony would have contradicted the evidence presented
relating to Martin's alleged interrogation in his
apartment.  Martin claims, however, are merely
conclusory, and are not supported by any affidavits or
statements from these three proposed witnesses.

Martin also claims that Hackett would have supported
his alibi "that none of the alleged stolen property was
mine, it was brought in by her . . . ."  (Paper 4-2, at
17).  Although Hackett did not testify at the suppression
hearing, she did testify at trial, and her testimony was
not favorable to Martin.  Hackett testified at trial that

Martin had told her the stolen items were taken out of storage, and later told her to claim that the items were hers. (Trial Tr. at 85). When police arrived, Hackett knew that the items were stolen. Id. at 106-07. Because Hackett's trial testimony did not support Martin's alibi, his attorney's failure to call her at the suppression hearing cannot be said to have been prejudicial. Accordingly, Martin's claims of ineffective assistance of trial counsel were, and continue to be, without merit.

C.   Ineffective Assistance of Appellate Counsel

Martin further contends that his appellate attorney was ineffective for her failure to raise additional issues on direct appeal. On direct appeal, the sole issue was whether the trial court properly denied the motion to suppress. Martin claims that appellate counsel was aware of the other issues he wished to have raised, and simply failed to bring them before the Vermont Supreme Court. Those issues presumably included each of the issues raised here. In reviewing the denial of Martin's post-conviction actions, the Vermont Supreme Court ruled that Martin had "failed to present admissible evidence to establish, or even create, a genuine dispute

19

that any alleged failure to raise issues on appeal were in fact negligent or that any such negligence made any material difference in the ultimate outcome."

As the state court properly found, Martin has failed to show that he was prejudiced by appellate counsel's performance.  He first claims that counsel should have raised a host of issues beyond the simple question of whether he was the subject of a police interrogation. Martin claims that he was handcuffed behind his back during the alleged questioning, and that without the benefit a <u>Miranda</u> warning, his confession was coerced. It is these facts that provide the primary support for his claims of "police misconduct" and "illegally obtained confession."  Martin's claim of "newly discovered evidence" also relates to the admissibility of his incriminating statements, since the "new" evidence consists of photographs showing him while he was handcuffed.

Despite Martin's claims, the handcuffing and lack of a <u>Miranda</u> warning were not material to the suppression decision, or to the ultimate determination of his guilt. The State did not dispute the custody issue.  Therefore,

if Martin had been successful on direct appeal, the prerequisites for a <u>Miranda</u> warning - custody and interrogation - would have been satisfied, and his conviction would have been called into doubt.  Counsel had no need to raise the other issues, and her failure to do so had no impact on the outcome.

Martin also claims that his sentence should have been challenged as excessive.  As the state courts properly found, Martin has failed to provide any record evidence that the trial judge acted improperly.  His conclusory statement that the judge abused his discretion by issuing a 10 year sentence is insufficient.

Martin's insufficient evidence claim rests, in part, on his contention that the trial court allowed inadmissible hearsay.  The alleged hearsay consisted of Martin's own out of court statements, which were admissible under Vermont Rule of Evidence 801.  As to the sufficiency of the evidence generally, the testimony at trial included the victims' descriptions of the stolen items, Hackett's testimony that Martin told her to lie about the items' origins, and the investigating officers' account of how the evidence led them to Martin.  Based

upon the trial transcript, this Court should conclude that the state courts acted reasonably in finding no negligence or prejudice on this claim.

The final point that Martin argues should have been raised on appeal is the general contention that his arrest, conviction and sentence were all unwarranted. This claim is largely repetitive of Martin's other claims, with some additional points that are, nonetheless, without merit.  For example, Martin claims that the state never showed pictures of the stolen items, and there was therefore "no evidence."  Martin also alleges that he was not allowed to view his pre-sentence investigation report ("PSR") until the day of his sentencing.  Martin does not contend that his attorney was denied timely access to the PSR, or that he himself was prejudiced by his alleged inability to review it. Because these arguments are lacking in substance, the state courts were justified in finding no prejudice as a result of appellate counsel's alleged failure to raise them on direct appeal.

D.   Excessive Sentence

The last issues addressed on the merits by the

22

Vermont Supreme Court was Martin's excessive sentence
claim.  As discussed above, the state courts found that
Martin failed to provide any evidence of judicial bias or
improper conduct by the sentencing judge.  Indeed,
Martin's arguments are based upon self-serving,
conclusory statements.  Because the state courts
reasonably determined that the facts did not merit
relief, this Court should similarly deny Martin's
petition with respect to his excessive sentence claim.

III.  Defaulted Claims

In his post-appeal actions in state court, the
courts found that some of Martin's claims were
procedurally barred.  Relevant to this case, the lower
state court held that Martin's claims of coercion were
barred because they should have been raised as part of
his motion to suppress "and then, if preserved, as an
issue on direct appeal."  (Paper 4-3 at 5).  The court
also barred Martin's claim that his conviction was based
upon perjured testimony and insufficient evidence.  Id.
at 7.[1]

---

[1]  Martin contends that the warrant for the search of
his apartment was unlawful because there was "no sworn
affidavit" signed by the Judge.  (Paper 4-2 at 24).  The

As set forth above, a federal court is barred from reviewing the merits of a claim that the state courts have denied on procedural grounds unless the petitioner can show "'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" Harris, 489 U.S. at 262 (citations omitted).  Martin claims that these arguments were not raised because appellate counsel was ineffective.  Although ineffective assistance of counsel may constitute cause for a procedural default, a defendant bears the risk of attorney error that results in a procedural default so long as he or she "is represented by counsel whose performance is not constitutionally ineffective under the standard established in [Strickland]."  Murray v. Carrier, 477 U.S. 478, 488 (1986); see Coleman, 501 U.S. at 752-53

_____

state courts did not discuss this claim.  However, because the claim was not raised on appeal, the Court may presume that it was defaulted.  Martin suffered no prejudice from this default, since it appears from the record that the Orleans Superior Court issued a warrant, based upon an affidavit and a finding of probable cause, to search his apartment on June 3, 2002.  (Paper 16-5 at 10).

(reaffirming Carrier rule).  As discussed previously, Martin received effective assistance of counsel on appeal.  Therefore, he has not established cause for his defaults, and the court need not consider prejudice resulting from those defaults.  See McCleskey v. Zant, 499 U.S. 467, 501 (1991).  Moreover, if the Court were to consider prejudice, the alleged failure to raise these arguments on direct appeal did not affect the outcome of the case for reasons set forth above.

Finally, Martin is unable to show that a fundamental miscarriage of justice will result.  A "miscarriage of justice" occurs only in the "extraordinary case" where a petitioner is able to establish "actual innocence," not "mere legal insufficiency."  Diaz v. Herbert, 317 F. Supp. 2d 462, 470 (E.D.N.Y. 2004) (quoting Bousley v. United States, 523 U.S. 614, 623-24 (1998)); see Carrier, 477 U.S. at 496.  Martin claims that it was Hackett who moved the stolen property into his apartment, and that "because of a few lies and being deceived by Kathleen Hackett and the State troopers, and also by Judge Walter Morris not seeing the case as a clear indication of me being lied about and railroaded," he was found guilty.

25

(Paper 4-3 at 10) (citation omitted).  The Orleans
Superior Court appropriately summed up the response to
Martin's story.

> [A]fter hearing extensive evidence at trial from
> Ms. Hackett, and others as to Plaintiff's
> penchant for manipulative, controlling, indeed
> threatening behavior against Ms. Hackett, the
> jury apparently rejected this alternative
> "explanation" for the plight Plaintiff then, and
> now finds himself in.  The learned and
> experienced trial judge, also having heard the
> same evidence, similarly rejected this spin on
> Plaintiff's predicament, and sentenced him to a
> fair and just sentence of 5 - 10 years based
> <u>solely</u> on the evidence in the case, the nature
> of the crime, and Plaintiff's own prior record.

<u>Id.</u> at 11.  Martin has not offered any new evidence to
support his claim of actual innocence.  Based upon the
evidence presented at trial, this Court should find that
Martin has failed to establish actual innocence.  His
defaulted claims should, therefore, be denied.

## Conclusion

For the reasons set forth above, I recommend that
Martin's petition for a writ of habeas corpus (Paper 4)
be DISMISSED.  Because Martin's claims lack sufficient
legal merit, his motion for appointment of counsel (Paper
2) is DENIED.

Dated at Burlington, in the District of Vermont,

26

this <u>8th</u> day of May, 2006.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. <u>See</u> Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).